**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE: ROBERT EDWARD
MCDERMOTT and LILLIAN MEDINA
MCDERMOTT

Bankruptcy Case 6:09-bk-10942-KSJ

ROBERT EDWARD MCDERMOTT and
LILLIAN MEDINA MCDERMOTT,

      Appellants,

-vs-                                      Case No. 6:10-cv-890-Orl-31GJK

GENE T. CHAMBERS,

      Appellee.

## ORDER

The Debtors/Appellants, Robert McDermott and Lillian McDermott (the "McDermotts"), appeal the order of the Bankruptcy Court (Doc. 2-3) sustaining the objection of the Trustee/Appellee, Gene Chambers ("Chambers") to the McDermotts' claimed exemption from the bankruptcy estate of certain funds held in a joint checking account.

**I.    Background**

The McDermotts filed their voluntary petitions for relief under Chapter 7 of the Bankruptcy Code on July 29, 2009. Robert McDermott was the president and a majority shareholder of a closely held corporation, GLR Ventures, Inc. ("GLR"). GLR filed a petition for relief under Chapter 7 on the same day as the McDermotts. According to GLR's Schedule of

Financial Affairs, the McDermotts owned two-thirds of the company, and the Robert McDermott Retirement Plan owned the remaining third.

On their Schedule of Assets and Liabilities, the McDermotts listed $54,079.59 held in a joint SunTrust checking account (the "Account"). Mr. McDermott contended that the money in the Account represented earnings that he had received from GLR for his services. The McDermotts claimed the funds in the Account were exempt from their bankruptcy estate pursuant to Fla. Stat. §222.11, titled "Exemption of wages from garnishment." The Trustee objected, contending that the funds were equity withdrawals, not wages, and were therefore not exempt. The Bankruptcy Court sided with the Trustee, finding that the funds did not qualify as earnings under Fla. Stat. § 222.11. This appeal followed.

**II.     Standard of Review**

In an appeal of a decision of the Bankruptcy Court, this Court sits as an appellate court. When reviewing the Bankruptcy Court's findings of fact, this Court applies the clearly erroneous standard. *In re Williamson*, 15 F.3d 1037, 1038 (11th Cir. 1994). "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on review of the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Lightner v. Lohn*, 274 B.R. 545, 548 (M.D. Fla. 2002). The burden of showing clear error falls on the party seeking to overturn the Bankruptcy Court's findings. *In re Caribbean K Line, Ltd.*, 288 B.R. 908, 911 (S.D. Fla. 2002).

This Court reviews the Bankruptcy Court's conclusions of law under a de novo standard. *Williamson*, 15 F.3d at 1038. Under de novo review, this Court independently examines the law and draws its own conclusions after applying the law to the facts of the case, without regard to

decisions made by the Bankruptcy Court. *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir. 2001).

**III.    Analysis**

The Debtors contend that the money in the Account represents all that is left of the wages earned by Robert McDermott from GLR from March 2009 through July 2009. Florida Statute § 222.11 exempts a portion of the "earnings" of a "head of family" from the claims of creditors. During the proceedings below, it was undisputed that Robert McDermott was a "head of family" and otherwise met the requirements of the statute. It was also not disputed that the money in the Account had originally been paid to Robert McDermott by GLR.[1] The sole disputed issue before the Bankruptcy Court was whether the $54,079.59 in the Account constituted "earnings" for purposes of Fla. Stat. § 222.11.

The statute defines "earnings" as "includ[ing] compensation paid or payable, in money of a sum certain, for personal services or labor whether denominated as wages, salary, commission, or bonus." Fla. Stat. § 222.11(1)(a). To decide whether monies from employment qualify for the Section 222.11 exemption, the relevant inquiry "is often whether a person's employment is a salaried job or is in the nature of running a business." *Brock v. Westport Recovery Group*, 832 So. 2d 209, 211 (Fla. 4th DCA 2002). In support of the contention that the sums he received from

---

[1] The Debtors submitted SunTrust statements for the period March 23, 2009 through July 29, 2009 and pay stubs from GLR to Robert McDermott for the period March 25, 2009 to July 27, 2009. These documents showed that GLR paid Robert McDermott $64,500 during this period, and that this money (less taxes) was deposited into the Account. Robert McDermott also testified that he received a $7,500 payment on March 19, 2009, but no pay stub for this amount was submitted. As noted by the Bankruptcy Court, this $7,500 payment, along with the $64,500 for which pay stubs were submitted, totals $72,000 – the exact amount for which the Debtors scheduled an unsecured claim on GLR's Schedule F. (Doc. 2-2 at 7).

GLR were earnings, Robert McDermott testified that he was president and general manager of GLR, and that as such he handled all of the marketing, pricing, accounting, legal and payroll issues, among others, for the company. He testified that he worked 55-60 hours per week for GLR, and that he had no other source of income.

The Trustee argued that Robert McDermott's services were essentially those of running GLR, rather than being employed by it, and that the disbursals from the company to Mr. McDermott therefore did not constitute "earnings". The Trustee pointed out that Robert McDermott had testified that there was no employment agreement between himself and GLR, and that he, along with three company managers and his wife, had full discretion over all hiring and compensation decisions. He also testified that when he started the company in 2005 he set a monthly wage for himself of $12,000 as compensation for his services to GLR, but that he would forego that salary when the company was cash deficient, as it often was. This testimony was supported by the Debtors' Statement of Financial Affairs, which listed Robert McDermott's 2007 income from GLR as $12,000 and his 2008 income from the company as $22,500. In addition, Mr. McDermott's 2008 Form 1040 listed total wages of $31,610.

The objecting party has the burden of proving that an exemption is not properly claimed. Fed.R.Bankr.P. 4003(c). Courts examine the totality of the circumstances to determine whether the Section 222.11 head-of-household exemption is applicable. *Brock*, 832 So. 2d at 211. After reviewing the evidence, the Bankruptcy Court concluded that the Trustee had met her burden, and sustained the objection. In addition to the *Brock* case, the Bankruptcy Court noted two other similar cases where Florida courts had held, in essence, that where the debtor controls the timing and amount of distributions from a family owned business, those distributions do not qualify as

"earnings" for purposes of Fla. Stat. § 222.11.  *See In re Manning*, 163 B.R. 380 (Bankr. S.D. Fla. 1994) *and see In re Zamora*, 187 B.R. 783 (Bankr.S.D. Fla. 1995).  The lack of a formal employment agreement, the irregularity of the timing and amount of the "salary" payments to Mr. McDermott during 2007 and 2008, the fact that the 2009 payments totaled the sum lent to the company by the Debtors, even the fact that the alleged salary payments resumed and increased during the months just before the company filed for bankruptcy protection (*i.e.*, at a time when the company's finances were likely worsening rather than improving), all supported the Bankruptcy Court's finding that the Debtors were trying to disguise an equity withdrawal as "earnings" to keep funds rightfully due their creditors.  (Doc. 2-2 at 6).  To be sure, there was evidence pointing the other way, such as the testimony from Mr. McDermott regarding the services he performed for

GLR. But after comparing the evidence supporting both possible conclusions, the Court is not left with the impression that a mistake was committed here.[2]

Accordingly, it is hereby

**ORDERED** that the decision of the Bankruptcy Court upholding the Trustee's objection to the Debtor's claimed exemption is **AFFIRMED**. The Clerk is directed to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 24, 2011.

_____
**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[2] The McDermotts also argue that the Bankruptcy Court erred as a matter of law by holding that a debtor without an arm's-length employment agreement cannot rely on Fla. Stat. § 222.11. (Doc. 10 at 4). The Bankruptcy Court did not hold that such an employment agreement (or any one of the other facts it addressed) was a prerequisite to qualification under Section 222.11. Rather, the lack of such an agreement was simply part of the totality of the circumstances that the Bankruptcy Court examined to assess whether the payments could qualify as "earnings" under the statute.